IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **ERIC HUMPHREY** | * |
| Plaintiff | * |
| v. | * Case No.: RWT 09cv3429 |
| **KEISHA BROWN, et al.** | * |
| Defendants. | * |

## MEMORANDUM OPINION

Plaintiff Eric Humphrey has brought this action for quiet title and declaratory and injunctive relief to determine the validity of a deed of trust, claiming that he is a victim of the Metropolitan Money Store scheme and the rightful owner of the real property located at 3407 21st Street SE, Washington, DC 20020 (the "Property").[1] Defendant Cohn, Goldberg & Deutsch, LLC ("CGD") moves to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6).

## BACKGROUND

The Metropolitan Money Store was formed in Maryland on May 12, 2005, Am. Compl. ¶ 39, purportedly for the purposes of offering foreclosure consultation and credit services to financially distressed homeowners in Maryland, Virginia, and the District of Columbia, *id.* ¶ 19. The corporation and affiliated entities were in reality a criminal enterprise. *Id.* ¶ 15.

Members of the criminal conspiracy targeted individuals who owned and had substantial equity in their homes but were facing foreclosure because of their inability to make monthly

---

[1] Plaintiff's counsel, William Carroll Johnson, Jr., has commenced at least six other similar actions in this Court on behalf of other purported victims of the Metropolitan Money Store scheme. *Frazier v. Rolon*, No. 09cv3427 (D. Md. Dec. 23, 2009); *Queen v. Walker*, No. 09cv3428 (D. Md. Dec. 23, 2009); *Humphrey v. Brown*, No. 09cv3429 (D. Md. Dec. 23, 2009); *Young v. Scott*, No. 10cv532 (D. Md. Mar. 3, 2010); *Barmer v. Walker*, No. 10cv916 (D. Md. Apr. 13, 2010); *Davis v. Fordham*, No. 10cv1141 (D. Md. May 7, 2010).

mortgage payments. *Id.* ¶ 42. Without consent or knowledge of the homeowners, the conspirators allegedly transferred title to straw purchasers by forging the deeds of trust. *Id.* ¶ 43. The conspirators then obtained fraudulently inflated loans in order to extract the maximum available equity from the homes. *Id.* ¶ 45. At settlements, the conspirators also imposed fees and required seller contributions in excess of industry standards. *Id.* Although the victim homeowners were told that the withdrawn equity would be used to pay their mortgages, *id.* ¶ 44, the conspirators instead converted the funds, *id.* ¶ 45. The straw purchasers were paid $10,000 for participating in the scheme. *Id.* ¶ 43.

Plaintiff Humphrey allegedly possessed and resided in the home at issue in this action, *id.* ¶ 54, and enlisted the services of Metropolitan Money Store to refinance the Property, *id.* ¶ 55. Without Plaintiff's knowledge or consent, the conspirators allegedly forged the deed to the Property in order to transfer title to the straw purchaser, Defendant Keisha Brown. *Id.* ¶¶ 57, 59. The conspirators then allegedly submitted a fraudulent loan application to New Century Mortgage ("New Century") in the name of Defendant Brown, *id.* ¶ 58, 64, 72, obtained an inflated loan, *id.* ¶¶ 64, 67, 73, and stripped the Property of its equity, *id.* ¶¶ 67, 71, 74.

Defendant Deutsche Bank later purchased the loan from New Century. *Id.* ¶ 79. The loan eventually became delinquent and Defendant Deutsche Bank purportedly mailed notices to Defendant Brown at the Property. *Id.* ¶ 80. The loan then went into default and Defendant Deutsche Bank engaged Defendant CGD to collect the debt and foreclose on the property. *Id.* ¶¶ 80, 85.

On October 19, 2007, CGD filed a notice of foreclosure with the District of Columbia Register of Deeds. *Id.* ¶ 86. Plaintiff allegedly first learned of the fraud after receiving the notice of foreclosure. *Id.* ¶ 88.

On March 11, 2010, CGD contacted Plaintiff and informed him that it intended to sell the Property at public auction on April 12, 2010. *Id.* ¶ 89. On March 16, 2010, Plaintiff's attorney notified CGD of the alleged forgery and requested that the foreclosure sale be cancelled until this lawsuit was resolved. *Id.* ¶ 92.

Defendant CGD placed an internal hold on the foreclosure sale of the Property on March 18, 2010 and contacted the foreclosing servicer and noteholder regarding the forgery allegations. ECF No. 29 at 3. On April 1, 2010, the foreclosing servicer formally instructed CGD to cancel the foreclosure sale. *Id.* That same day, CGD contacted Plaintiff's counsel to inform him that the foreclosure sale scheduled for April 12, 2010 had been cancelled. Pl.'s Opp'n at 7. Since April 12, 2010, CGD has taken no further action to foreclose on the Property. ECF No. 9 at 2.

## PROCEDURAL HISTORY

Plaintiff commenced this action on December 23, 2009, and amended his complaint on July 9, 2010. The amended complaint contains the following four counts:

Count I:   Declaration and Injunction for Quiet Title and Right to Petition Court for Reformation of Deed;
Count II:  Declaration and Injunction for Determination of Rights under Mortgage Notes;
Count III: Declaration and Injunction for Determination of Rights under Deed of Trust; and
Count IV:  Violation of the Fair Debt Collection Practices Act ("FDCPA").

Count IV is the only count in which Defendant CGD is named. On August 12, 2010, CGD filed a motion to dismiss Count IV of the Amended Complaint for failure to state a claim upon which relief can be granted. ECF No. 25. The Court held a hearing on CGD's motion on November 24, 2010.

3

## STANDARD OF REVIEW

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

## ANALYSIS

CGD argues that it did not violate the FDCPA because it did not engage in any debt collection activity after Plaintiff informed CGD of the alleged forgery. In response, Plaintiff argues that CGD's failure to immediately cancel the foreclosure sale on March 16, 2010—the date Plaintiff informed CGD of the alleged forgery—constitutes a violation of Section 1692g the FDCPA.

The FDCPA requires a debt collector to "cease collection of the debt" after receiving a request for verification of a disputed debt. Section 1692g(b) of the FDCPA provides

> "If the consumer notifies the debt collector in writing, within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, . . . *the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt* . . ."

15 U.S.C. § 1692g(b) (emphasis added).

By its plain terms, the FDCPA requires only that a debt collector cease collection activity when a debt is disputed; it does not require the debt collector to take any affirmative action to cancel debt collection activity previously initiated.

Several federal courts have rejected arguments that Section 1692g(b) imposes affirmative obligations on debt collectors. In *Maynard v. Cannon*, the United States District Court for the District of Utah rejected Plaintiff's argument that a substitute trustee violated Section 1692g(b) of the FDCPA by failing to cancel the notice of default he had filed with the county recorder before he had received a letter from Plaintiff disputing the debt. *Maynard v. Cannon*, 650 F. Supp. 2d 1138 (D. Utah 2008). The court held that "[e]ven if the FDCPA is applicable to this case, it only requires a debt collector to 'cease collection of the debt' after receiving a request for verification . . . The FDCPA *does not require an action to be undone.*" *Id.* at 1144 (emphasis added), *see also Sambor v. Omnia Credit Svcs., Inc.*, 183 F. Supp. 2d 1234, 1242 (D. Hawaii 2002) (FDCPA imposes no affirmative obligation on debt collector to verify disputed debt so long as it ceases collection activity upon receipt of dispute.)

Similarly, the Eleventh Circuit held that the FDCPA imposes no affirmative duty on a debt collector to prevent the recording of a lien after a debtor disputes and requests verification of the debt. *Shimek v. Weissman*, 374 F.3d 1011 (11th Cir. 2004). In *Shimek v. Weissman*, a debt collector filed a lien with the court clerk at the same time it sent a demand letter to Plaintiff regarding the debt. *Id.* at 1013. Plaintiff later requested verification of the debt and sued the debt collector because it failed to take any action to prevent the court clerk from recording the lien after the debt had been disputed. *Id.* at 1014. The district court rejected Plaintiff's argument that the debt collector's inaction constituted a violation of the FDCPA and the Eleventh Circuit affirmed:

> "The plain language of Section 1692g(b) mandates that a debt collector 'cease collection of the debt' once verification is requested. Here, it is undisputed that the [debt collector] took no further action once [Plaintiff] requested verification of the debt on May 28, 2002. The [debt collector] filed the lien with the Court Clerk [on May 16, 2002] but ceased all collection activities once [Plaintiff] disputed the debt and requested verification. The record fails to indicate that the [debt collector] took any action to foreclose on the lien after [Plaintiff] disputed the debt, which would have been the next procedural step in the debt collection process under Georgia law. *The statute does not require the law firm to take "positive action" and interfere, even if it was able to, with the Court Clerk's duty to record liens.*"

*Id.* at 1014 (emphasis added).

The Court finds the reasoning of its sister courts persuasive. Section 1692g(b) of the FDCPA merely prohibits debt collectors from engaging in certain debt collection activity; it does not impose on debt collectors an affirmative obligation to interfere with or cancel debt collection activity undertaken before the debt was disputed.

Plaintiff disputed the debt by informing CGD of the alleged forgery on March 16, 2010. Defendant CGD cancelled the foreclosure sale on April 1, 2010 and promptly notified Plaintiff's counsel of the cancellation. Plaintiff makes no allegation that CGD has pursued the foreclosure sale since Plaintiff disputed the debt. The FDCPA imposed no affirmative obligation on CGD to immediately cancel the foreclosure sale—rather it required only that CGD not proceed with the foreclosure sale without first verifying the debt. CGD in fact promptly investigated the dispute and cancelled the sale within two weeks of the date on which Plaintiff disputed the debt. Because CGD ceased all debt collection activity once it received Plaintiff's dispute, it did not violate Section 1692g(b) of the FDCPA.[2]

---

[2] Plaintiff's counsel indicated at the November 24, 2010 hearing that allegations concerning violations of 15 U.S.C. §§ 1692f(1) and 1692e(2)(A) contained in the Amended Complaint were the result of a clerical error. Accordingly, Plaintiff abandoned claims that CGD violated these provisions of the FDCPA.

## CONCLUSION

Count IV is premised solely on the fact that CGD did not immediately cancel the foreclosure sale when notified of the alleged forgery contained in the deed transferring the property to Defendant Brown. Such inaction on CGD's part is not prohibited by Section 1692g(b) of the FDCPA. Accordingly, Count IV will be dismissed by separate order.

January 7, 2011
Date

Roger W. Titus
United States District Judge